**RECEIVED**

2016R00006/DAH/JXM

MAR 8 - 2016

AT 8:30_____

WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA  :  Criminal No. 16-114 (WHW)
                          :
          v.              :
                          :  18 U.S.C. §§ 371, 1343, 1952(a)(1)&(3), 2
BERNARD GREENSPAN         :  42 U.S.C. § 1320a-7b(b)(1)(A)
                          :

I N D I C T M E N T

The Grand Jury in and for the District of New Jersey,

sitting at Newark, charges:

**COUNT ONE**
(Conspiracy to Violate the Federal
Anti-kickback Statute and Travel Act
and to Defraud Patients of Honest Services)

1.   Unless otherwise indicated, at all times relevant to

this Indictment:

a.   Biodiagnostic Laboratory Services, LLC ("BLS")

was a clinical blood laboratory headquartered in Parsippany, New

Jersey that, among other things, performed tests on the blood

specimens of patients referred to BLS by medical doctors

("Physicians"), and then billed others for those tests and related

services.

b.   The Medicare Program ("Medicare") was a federal

program that provided free or below-cost health care benefits to

certain individuals, primarily the elderly, blind, and disabled.

Medicare was a "Federal health care program" as defined in Title 42,

- 1 -

United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "Beneficiaries."

      c.   The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled.  The Medicare Part B program paid for various medical services for Beneficiaries, including blood tests and related services.

      d.   BLS was an approved Medicare provider, and Medicare paid BLS for performing blood tests and related services performed for Beneficiaries who had been referred to BLS by Physicians participating in Medicare.

      e.   BLS billed, and was paid by, various private health care insurance companies (collectively, the "Private Insurers") in the business of providing health care insurance to individuals and entities under various insurance policies (the "Insureds"), pursuant to which the Private Insurers paid BLS for blood tests and related services performed for Insureds who had been referred to BLS by Physicians.

      f.   BLS paid sales representatives a commission based on the amount of revenue received by BLS from Medicare and the

Private Insurers for the performance of blood tests and related services performed on blood specimens referred to BLS by Physicians the sales representatives recruited or serviced.

g.   David Nicoll, who is a co-conspirator not charged herein, was an owner and the President of BLS and generally exercised control over the operations of BLS.

h.   Scott Nicoll, who is a co-conspirator not charged herein, was employed by and acted on behalf of BLS. In addition, beginning in or about 2010, Scott Nicoll caused the formation of an entity called Nicoll Brothers Consulting, LLC.

i.   Craig Nordman, who is a co-conspirator not charged herein, was employed by and acted on behalf of BLS as a sales representative.  In addition, beginning in or about 2010, Craig Nordman caused the formation of an entity called Advantech Sales, LLC ("Advantech").

j.   William Dailey, who is a co-conspirator not charged herein, acted on behalf of BLS.

## The BLS Bribery Scheme

2.    Beginning prior to March 2006 and continuing through in or about April 2013, BLS routinely paid Physicians bribes to induce them to refer the blood specimens of their Medicare and Private Insurer patients to BLS for testing.

3.    During the BLS bribery scheme, BLS bribed Physicians practicing medicine in New Jersey and in New York.   To generate funds to pay bribes in a given month, BLS relied upon and used the monies generated by patient blood specimen referrals from Physicians, wherever located, that had been obtained in prior months.

## Defendant BERNARD GREENSPAN

4.    At all times relevant to this Indictment, the defendant, BERNARD GREENSPAN, was a licensed medical doctor who practiced medicine in Bergen County, New Jersey. As a physician, defendant BERNARD GREENSPAN owed a fiduciary duty to his patients. In addition, BERNARD GREENSPAN had a duty of honest services to his patients that included the duty to refrain from accepting, or agreeing to accept, bribes and kickbacks offered in exchange for patient blood specimen referrals.

5.    From at least as early as in or about March 2006, defendant BERNARD GREENSPAN agreed with one or more persons employed by and/or acting on behalf of BLS to refer the blood specimens of

- 4 -

his Medicare and Private Insurer patients to BLS for testing in exchange for monthly bribe payments.

6.   From at least as early as in or about March 2006 through April 2013, defendant BERNARD GREENSPAN accepted bribes in the form of checks, cash, and other items of value in exchange for referring the blood specimens of his Medicare and Private Insurer patients to BLS.   BERNARD GREENSPAN did not advise his patients that he was receiving bribes in exchange for referring their blood specimens to BLS.

7.   The referrals from BERNARD GREENSPAN enabled BLS to collect more than $3,000,000 from Medicare and the Private Insurers.

8.   From at least as early as in or about March 2006 through in or about April 2013, in the District of New Jersey, and elsewhere, defendant

BERNARD GREENSPAN

did knowingly and intentionally conspire and agree with David Nicoll, Scott Nicoll, Craig Nordman, William Dailey, and others to commit offenses against the United States, that is:

a.   to willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS through one or more co-conspirators, in order to induce defendant BERNARD GREENSPAN to refer patients and cause the referral of patients to BLS for the

furnishing and arranging of items and services, that is, the referral of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

      b.   to knowingly and intentionally travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery, contrary to N.J.S.A. § 2C:21-10 and Title 18, United States Code, Section 1952(a)(1)and (a)(3) and, thereafter, to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity, contrary to Title 18, United States Code, Sections 1952(a)(1) and (3); and

      c.   to knowingly and intentionally devise a scheme and artifice to defraud BERNARD GREENSPAN's patients of their right to his honest services as their physician and to transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs,

signals, pictures and sounds for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Sections 1343 and 1346.

Object of the Conspiracy

9.    The object of the conspiracy was to illegally generate large sums of money for defendant BERNARD GREENSPAN, co-conspirators David Nicoll, Scott Nicoll, Craig Nordman, William Dailey, and others by exchanging concealed bribes for referrals of patient blood specimens that generated revenue for BLS.

Manner and Means of the Conspiracy

10.    The manner and means by which defendant BERNARD GREENSPAN, David Nicoll, Scott Nicoll, Craig Nordman, William Dailey, and others sought to accomplish the object of the conspiracy included, among other things, the following:

a.    It was part of the conspiracy that, from in or about March 2006 through in or about July 2010, one or more co-conspirators offered, and defendant BERNARD GREENSPAN accepted, bribes in the form of sham "rent" checks of approximately $2,000 to 2,500 per month to induce the referral of patient blood specimens to BLS (the "Rent Bribes").

b.    It was further part of the conspiracy that, from in or about May 2008 through in or about July 2010, one or more co-conspirators offered, and defendant BERNARD GREENSPAN accepted,

- 7 -

bribes in the form of sham "Service Agreement" checks of approximately $720 to $1,750 per month to induce the referral of patient blood specimens to BLS (the "Service Agreement Bribes").

c.    It was further part of the conspiracy that, beginning in or around July 2010, certain of the bribes paid to Physicians including defendant BERNARD GREENSPAN began to be paid by BLS through sham LLC entities, such as Advantech, that were formed by co-conspirators to further disguise the bribes being paid by BLS.

d.    It was further part of the conspiracy that, from in or about November 2010 through in or about April 2013, one or more co-conspirators offered, and defendant BERNARD GREENSPAN accepted, bribes in the form of sham "Consulting Agreement" checks of $1,500 per month to induce the referral of patient blood specimens to BLS (the "Consulting Agreement Bribes").  The Consulting Agreement Bribes were paid by BLS to defendant BERNARD GREENSPAN through Advantech.

e.    It was further part of the conspiracy that BLS paid Rent Bribes, Service Agreement Bribes, and Consulting Agreement Bribes (collectively, the "Monthly Bribe Payments") to BERNARD GREENSPAN totaling approximately $200,000.  Many of the Monthly Bribe Payment checks cashed by BERNARD GREENSPAN were negotiated through interstate banking channels.

f.    It was further part of the conspiracy that, in addition to the Monthly Bribe Payments, from in or about November 2010 through in or about April 2013, defendant BERNARD GREENSPAN periodically solicited, and one or more co-conspirators agreed to pay, additional bribes to induce the referral of patient blood specimens to BLS, as well as to induce defendant BERNARD GREENSPAN's ordering of specific test panels.   These additional bribes included, among other things, payment for holiday parties for BERNARD GREENSPAN and his office staff, worth in the aggregate thousands of dollars, as well as the payment of fee-per-test cash bribes to BERNARD GREENSPAN (collectively, the "Additional Bribe Payments").

g.    It was further part of the conspiracy that, in addition to the Monthly Bribe Payments and the Additional Bribe Payments, and in response to a specific request by BERNARD GREENSPAN, BLS agreed to hire and employ Individual 1, a patient of BERNARD GREENSPAN with whom he was having sexual relations.   BLS employed Individual 1 from in or around March 2008 through in or around March 2009.

h.    It was further part of the conspiracy that defendant BERNARD GREENSPAN maintained periodic contact with one or more co-conspirators through interstate communications, including via telephone and text messages.

i.    It was further part of the conspiracy that various of the co-conspirators made efforts to track, by month: (i) the monies paid as bribes to defendant BERNARD GREENSPAN; (ii) the blood tests defendant BERNARD GREENSPAN caused to be ordered and referred to BLS; and (iii) the revenue those blood tests generated for BLS.

<u>Overt Acts</u>

11.    In furtherance of the conspiracy and in order to effect the objects thereof, defendant BERNARD GREENSPAN and his co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a.    On or about July 5, 2011, at the direction of BLS and using funds provided by BLS, Advantech issued a Consulting Agreement Bribe check in the amount of $1,500 made payable to Bernard Greenspan MD.

b.    On or about July 13, 2011, defendant BERNARD GREENSPAN caused the Consulting Agreement Bribe check, referenced in Paragraph 11(a) above, to be deposited into a bank account held in the name of Dr. Bernard Greenspan DO PA.

c.    On or about July 13, 2011, defendant BERNARD GREENSPAN caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

d.   On or about August 11, 2011, BLS received approximately $300 from Medicare via an interstate bank wire for patient blood tests ordered by BERNARD GREENSPAN and processed by BLS, as referenced in Paragraph 11(c) above.

e.   On or about September 6, 2011, at the direction of BLS and using funds provided by BLS, Advantech issued a Consulting Agreement Bribe check in the amount of $1,500 made payable to Bernard Greenspan MD.

f.   On or about September 7, 2011, defendant BERNARD GREENSPAN caused the Consulting Agreement Bribe check, referenced in Paragraph 11(e) above, to be deposited into a bank account held in the name of Dr. Bernard Greenspan DO PA.

g.   On or about September 7, 2011, defendant BERNARD GREENSPAN caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

h.   In or about November 2011, defendant BERNARD GREENSPAN left a voicemail message for Craig Nordman in which he stated that he wanted to meet with Craig Nordman on or about December 1, 2011, "because we could use the money to deposit." Defendant BERNARD GREENSPAN further stated that he wanted BLS to pay for his office holiday party at the Capital Grille on December 14, 2011.

i.    On or about December 5, 2011, Craig Nordman physically delivered a Monthly Bribe Payment to defendant BERNARD GREENSPAN.

j.    On or about December 7, 2011, Craig Nordman sent BERNARD GREENSPAN a text message reading, "Your party is confirmed!"

k.    On or about December 14, 2011, defendant BERNARD GREENSPAN accepted, as a bribe, payment from BLS for a holiday party for his office staff at the Capital Grille in Paramus, New Jersey.

l.    On or about December 15, 2011, defendant BERNARD GREENSPAN caused a patient blood test to be ordered and the resulting blood specimen to be referred to BLS.

m.    On or about December 17, 2011, defendant BERNARD GREENSPAN caused a patient blood test to be ordered and the resulting blood specimen to be referred to BLS.

n.    On or about April 2, 2012, at the direction of BLS and using funds provided by BLS, Advantech issued a Consulting Agreement Bribe check in the amount of $1,500 made payable to Bernard Greenspan MD.

o.    On or about April 2, 2012, defendant BERNARD GREENSPAN accepted from a co-conspirator the Consulting Agreement Bribe check referenced in Paragraph 11(n) above.

p.    On or about April 4, 2012, defendant BERNARD GREENSPAN caused the Consulting Agreement Bribe check referenced in

- 12 -

Paragraph 11(n) above to be deposited into a bank account held in the name of Dr. Bernard Greenspan DO PA.

q.   On or about April 27, 2012, defendant BERNARD GREENSPAN caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

r.   On or about May 3, 2012, at the direction of BLS and using funds provided by BLS, Advantech issued a Consulting Agreement Bribe check in the amount of $1,500 made payable to Bernard Greenspan DO.

s.   On or about May 8, 2012, defendant BERNARD GREENSPAN accepted from a co-conspirator the Consulting Agreement Bribe check referenced in Paragraph 11(r) above.

t.   On or about May 9, 2012, defendant BERNARD GREENSPAN caused the Consulting Agreement Bribe check referenced in Paragraph 11(r) above to be deposited into a bank account held in the name of Dr. Bernard Greenspan DO PA.

u.   On or about May 18, 2012, BLS received approximately $400 from Medicare via an interstate bank wire for patient blood tests ordered by BERNARD GREENSPAN and processed by BLS, as referenced in Paragraph 11(q) above.

v.   On or about May 23, 2012, defendant BERNARD GREENSPAN caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

w.   On or about June 14, 2012, BLS received approximately $600 from Medicare via an interstate bank wire for patient blood tests ordered by BERNARD GREENSPAN and processed by BLS, as referenced in Paragraph 11(v) above.

x.   On or about September 6, 2012, at the direction of BLS and using funds provided by BLS, Advantech issued a Consulting Agreement Bribe check in the amount of $1,500 made payable to Bernard Greenspan MD.

y.   On or about September 10, 2012, defendant BERNARD GREENSPAN accepted from a co-conspirator the Consulting Agreement Bribe check referenced in Paragraph 11(x) above.

z.   On or about September 12, 2012, defendant BERNARD GREENSPAN caused the Consulting Agreement Bribe check referenced in Paragraph 11(x) above to be deposited into a bank account held in the name of Dr. Bernard Greenspan DO PA.

aa.   On or about September 19, 2012, defendant BERNARD GREENSPAN caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

bb.   On or about October 18, 2012, BLS received approximately $500 from Medicare via an interstate bank wire for patient blood tests ordered by BERNARD GREENSPAN and processed by BLS, as referenced in Paragraph 11(aa) above.

cc.   On or about December 4, 2012, Craig Nordman sent BERNARD GREENSPAN a text message reading, "On my way. 20 min away."

dd.   On or about December 4, 2012, Craig Nordman physically delivered a Consulting Agreement Bribe check to defendant BERNARD GREENSPAN.

ee.   On or about December 5, 2012, defendant BERNARD GREENSPAN caused the Consulting Agreement Bribe check referenced in Paragraph 11(dd) above to be deposited into a bank account held in the name of Dr. Bernard Greenspan DO PA.

ff.   On or about December 12, 2012, defendant BERNARD GREENSPAN accepted, as a bribe, payment from BLS for a holiday party for his office staff at the Capital Grille in Paramus, New Jersey.

gg.   On or about December 14, 2012, defendant BERNARD GREENSPAN sent a text message to Craig Nordman stating, "Thanx for a great nite last nite."

hh.   On or about December 15, 2012, defendant BERNARD GREENSPAN caused a patient blood test to be ordered and the resulting blood specimen to be referred to BLS.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FOUR

### (Illegal Remuneration in Violation of
### the Federal Anti-Kickback Statute)

1.    Paragraphs 1 through 7 and 9 through 11 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendant

BERNARD GREENSPAN

did knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS, in order to induce defendant BERNARD GREENSPAN to refer patients and cause the referral of patients to BLS for the furnishing and arranging for the furnishing of items and services, that is, the referral of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, as follows:

| Count | Approximate Date of Kickback/Bribe |
|-------|-----------------------------------|
| TWO   | July 13, 2011                     |
| THREE | December 14, 2011                 |
| FOUR  | December 12, 2012                 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), and Title 18, United States Code, Section 2.

**COUNTS FIVE THROUGH SEVEN**
(Use of the Mail and Facilities in Interstate Commerce
and Interstate Travel to Promote, Carry On
and Facilitate Commercial Bribery)

1.    Paragraphs 1 through 7 and 9 through 11 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendant

BERNARD GREENSPAN

did knowingly travel in and use the mail and facilities in interstate commerce and cause the travel in and use of the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery contrary to N.J.S.A. § 2C:21-10, and, thereafter, did perform and attempt to perform an act to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity as follows:

| Count | Approximate Date | Travel or Use of Mail or Facility in Interstate Commerce | Acts Performed Thereafter |
|-------|------------------|----------------------------------------------------------|---------------------------|
| FIVE | August 11, 2011 | Bank Wire, as set forth in Paragraph 11(d) of Count One | The Acts Set Forth in Paragraphs 11(e) and 11(f) of Count One |
| SIX | December 7, 2011 | Text Message, as set forth in Paragraph 11(j) of Count One | The Acts Set Forth in Paragraphs 11(l) and 11(m) of Count One |
| SEVEN | December 4, 2012 | Text Message, as set forth in Paragraph 11(cc) of Count One | The Acts Set Forth in Paragraphs 11(dd) and 11(ee) of Count One |

All in violation of Title 18, United States Code, Section 1952(a)(1) and (3), and Title 18, United States Code, Section 2.

## COUNTS EIGHT THROUGH TEN
(Scheme to Defraud Patients of Honest Services by
Defendant BERNARD GREENSPAN Accepting Concealed Bribes)

1.    Paragraphs 1 through 7 and 9 through 11 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2.    At all times relevant to Counts Eight through Ten of this Indictment, defendant BERNARD GREENSPAN's patients had an intangible right to his honest services as their physician. Defendant BERNARD GREENSPAN owed to his patients a duty to refrain from seeking and receiving bribes and kickbacks in exchange for defendant BERNARD GREENSPAN's actions as their physician.

3.    From at least as early as in or about March 2006 through in or about April 2013, in the District of New Jersey, and elsewhere, defendant

BERNARD GREENSPAN,

with others, knowingly and intentionally did devise and intend to devise a scheme and artifice to defraud defendant BERNARD GREENSPAN's patients of the right to defendant BERNARD GREENSPAN's honest services as their physician.

3.    The object of this scheme and artifice to defraud was for defendant BERNARD GREENSPAN and others to deprive defendant BERNARD GREENSPAN's patients of the honest services of defendant BERNARD GREENSPAN by defendant BERNARD GREENSPAN accepting and agreeing to accept concealed and undisclosed bribes and kickbacks from BLS, in

- 20 -

exchange for defendant BERNARD GREENSPAN's referral of patient blood specimens to BLS.

4.     To carry out the scheme and to effect its unlawful object, defendant BERNARD GREENSPAN, and others, engaged in a number of means and methods, including those referred to in Paragraphs 1 through 7 and 9 through 11 of Count One, among others, as described below.

5.   On or about the dates set forth below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendant

BERNARD GREENSPAN,

and others, knowingly and intentionally transmitted and caused to be transmitted in interstate commerce by means of wire, radio, and television communication, certain writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Approximate Date | Wire Transmission in      Interstate Commerce |
|-------|------------------|-----------------------------------------------|
| EIGHT | May 18, 2012 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 11(u) of Count One |
| NINE | June 14, 2012 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 11(w) of Count One |
| TEN | October 18, 2012 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 11(bb) of Count One |

In violation of Title 18, United States Code, Sections 1343 and 1346, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION AS TO COUNT ONE

1.    As a result of committing the conspiracy offense in violation of 18 U.S.C. § 371 as alleged in Count One of this Indictment, defendant BERNARD GREENSPAN shall forfeit to the United States:

(a)    Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in Count One of this Indictment;

(b)    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1952(a)(1) and (3) as alleged in Count One of this Indictment; and

(c)    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1343 and 1346 as alleged in Count One of this Indictment;

And all property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNTS TWO THROUGH FOUR

2.    As a result of committing the offenses in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in Counts Two, Three and Four of this Indictment, defendant BERNARD GREENSPAN shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in such Counts, and all property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNTS FIVE THROUGH SEVEN

3.     As a result of committing the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3), as alleged in Counts Five, Six, and Seven of this Indictment, defendant BERNARD GREENSPAN shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3) as alleged in such Counts, and all property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNTS EIGHT THROUGH TEN

4.    As a result of committing the offense in violation of 18 U.S.C. §§ 1343 and 1346, as alleged in Counts Eight, Nine, and Ten of this Indictment, defendant BERNARD GREENSPAN shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1343 as alleged in such Counts, and all property traceable to such property.

## SUBSTITUTE ASSETS PROVISION
## <u>APPLICABLE TO ALL FORFEITURE ALLEGATIONS</u>

5.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third person;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p)

(as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c)), to

seek forfeiture of any other property of said defendant up to the

value of the above forfeitable property.

A TRUE BILL

PAUL J. FISHMAN
United States Attorney

- 27 -

CASE NUMBER: 16 - 14 (WHW)

**United States District Court**
**District of New Jersey**

UNITED STATES OF AMERICA

v.

**BERNARD GREENSPAN**

**INDICTMENT FOR**

18 U.S.C. §§ 371, 1343, 1346, 1952(a)(1)&(3), 2
42 U.S.C. § 1320a-7b(b)(1)(A)

A True Bill,

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

JOSEPH N. MINISH & DANIELLE ALFONZO WALSMAN
*ASSISTANT U.S. ATTORNEYS*
*(973)645-2700*

USA-48AD 8
(Ed. 1/97)